### CANON v. UNITED STATES.
### No. 27473.

United States District Court
N. D. California, S. D.
March 11, 1953.

---

163

Ralph Wertheimer, San Francisco, Cal., for plaintiff.

Chauncey Tramutolo, U. S. Atty. and C. Elmer Collett, Asst. U. S. Atty., San Francisco, Cal., for defendant.

MURPHY, District Judge.

This suit is brought under the Tort Claims Act, 28 U.S.C.A. § 921 et seq., 1948 Revision, 28 U.S.C.A. § 2671 et seq.

At a prior trial of the same cause, the Court granted a motion by the United States for dismissal. Cannon v. United States, D.C.N.D.Cal., 84 F.Supp. 820. On appeal, the judgment was reversed. Canon v. United States, 9 Cir., 188 F.2d 444.

The facts are that plaintiff was a civilian medical secretary or clerk employed in the DeWitt General Hospital at Auburn, California, operated by the Medical Department

of the War Department. On June 14, 1945, while she was so employed, Colonel William Smith, commanding officer of the hospital, arranged for her to be operated upon in the Army Hospital for varicose veins in her legs, a disease or ailment with which she had been afflicted for some time. The operation was performed by Dr. E. Wm. Rector and she received post-operative treatment from both Dr. Rector and Dr. Norman Freeman, chief of the vascular section of the Hospital, both of whom were medical officers on duty at the Hospital.

Plaintiff contends that the operation was negligently performed and resulted in infection of the wound, and that such negligence, contributed to by negligence in the treatment of the wound thereafter, caused the infection to develop into a phagedenic ulcer, a rare and serious disease. She seeks general damages against the United States in the sum of One Hundred Thousand ($100,000) Dollars, as well as special damages.

## I.

The first question presented is the liability of the United States for the alleged negligence of the attending physicians in this case.

By Section 1346 of 28 U.S.C.A., Federal Tort Claims Act, the United States waives its sovereign immunity to suits for damages for personal injuries "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred". By Section 2671, members of the military forces of the United States are declared to be within the term "employee of the government". "Scope of employment" is determined by reference to the law of the place where the act in question was done. United States v. Eleazer, 4 Cir., 177 F.2d 914; Murphey v. United States, 9 Cir., 179 F.2d 743.

Army Regulations No. 40–590, a copy of which was before the Court, govern the admissibility of patients to Army Hospitals.

The portions of the Regulations necessary to be noticed here provide:

"[Par.] 2. General duties of commanding officer * * *

"b. Patients.

"(1) The commanding officer or one of his commissioned assistants will determine which patients are to be admitted to or discharged from the hospital * * *

*　*　*　*　*　*

"[Par.] 6. Persons who may be admitted to Army hospitals * * *.

"b. List.

*　*　*　*　*　*

"(13) Civilian employees of the United States Government compensable by the United States Employees' Compensation Commission who suffer personal injury while in the performance of official duty, or who acquire a disease as a natural result of such injury, *or who acquire an Occupational disease in the performance of official duty* * * *." (Emphasis supplied).

Among the exhibits introduced at the trial is a form (being part of the official records of the Hospital) giving the data relative to plaintiff's admission and discharge. Under subheading 10 "Source of Admission" appears the statement "Par. 6b(13) AR 40–590". This form appears to have been made out, or at least completed, at the time of plaintiff's discharge from the hospital on November 24, 1945. It bears in the space for signature the name "Stanley A. Levy, Major, MAC."

Colonel William H. Smith, the commanding officer of DeWitt General Hospital at the time this action arose, testified however, that neither he nor an authorized subordinate made a determination that the plaintiff was properly admissible into the hospital under Army Regulations 40–590 Par. 6b(13); in fact, Colonel Smith stated that he knew plaintiff did not fall within the provisions of that regulation as her ailment antedated federal employment. The form signed by Major Levy which listed "Par. 6b(13) AR 40–590" as the source of plaintiff's admission was executed because "something had to be put down

there or they wouldn't take the card in Washington". Questioned in detail as to the actual reason for plaintiff's admission to the hospital, Colonel Smith testified that competent medical secretaries like plaintiff were extremely hard to procure and retain in war time, and that he, being charged with the responsibility of running the hospital, determined to have the operation performed there in order to get plaintiff back on duty in the shortest possible time and thus benefit both her and the government. He testified further that he had made similar decisions in the past, that such decisions fell properly within the purview of a commanding officer's responsibility, and that other military hospitals at times admit civilians not specifically covered by applicable regulations. Colonel Smith thus effectively negatived the inference that plaintiff had been admitted to the hospital on the basis of a valid administrative finding to the effect that her ailment was one covered by Par. 6b(13) of AR 40–590. Colonel Smith acted without statutory authority in admitting plaintiff.

But lack of actual authority to do an act does not necessarily preclude that act's being within the scope of the servant's employment so as to bind his principal. In determining whether or not conduct, though not authorized, is nevertheless so similar to or incidental to the conduct authorized as to be within the scope of employment, the following matters of fact are to be considered:

(a) whether or not the act is one commonly done by such servants;

(b) the time, place and purpose of the act;

(c) the previous relations between the master and the servant;

(d) the extent to which the business of the master is apportioned between different servants;

(e) whether the act is outside the enterprise of the master or, if within the enterprise, has not been entrusted to any servant;

(f) whether or not the master has reason to expect that such an act will be done;

(g) the similarity in quality of the act done to the act authorized;

(h) whether or not the instrumentality by which the harm is done has been furnished by the master to the servant;

(i) the extent of departure from the normal method of accomplishing an authorized result; and

(j) whether or not the act is seriously criminal. (Restatement of Agency, § 229). The numerous cases cited in the California Annotations to Sec. 229 of the Restatement of Agency indicate that the California law is in accord. In Loper v. Morrison, 23 Cal.2d 600, 606, 145 P.2d 1, 4, the California Supreme Court stated that in determining whether an employee acts within the scope of his employment, among the factors to be considered are " * * * the intent of the employee, the nature, time, and place of his conduct, his actual and implied authority, the work he was hired to do, the incidental acts that the employer should reasonably have expected would be done, and the amount of freedom allowed the employee in performing his duties". Among the authorities cited by the California Court is the Restatement of Agency §§ 228–237, of which § 230 states, "An act, although forbidden or done in a forbidden manner, may be within the scope of employment." See also Murphey v. United States, 9 Cir., 179 F.2d 743, 746. Where the employee's tortious act violated his employer's instructions, the California Courts have decided the cases on the basis of whether the employee was acting on behalf of his employer and not for his own benefit. Thus in McChristian v. Popkin, 75 Cal.App.2d 249, 171 P.2d 85, a theatre owner was held liable when his guard assaulted an unruly patron while keeping order, whereas in Lane v. Safeway Stores, Inc., 33 Cal.App.2d 169, 91 P.2d 160, the same test spelled nonliability for the Safeway Company where one of its clerks engaged in horseplay with a customer for no purpose connected with the employer's business. And the law is clear that the scope of employment is not transcended where the act complained of benefits the servant or a third person as long as

it also serves the master's business and promotes the object of the employment. Ryan v. Tarrell, 208 Cal. 200, 280 P. 945; Stansell v. Safeway Stores, 44 Cal.App.2d 822, 113 P.2d 264; Hubbard v. Lock Joint Pipe Co., D.C.Mo., 70 F.Supp. 589.

■ In the case at bar, Colonel Smith, as the commanding officer of DeWitt General Hospital was charged with the administration of a military hospital and the welfare of the patients. It was his responsibility to admit certain civilian patients and to deny admission to others. His uncontradicted testimony is to the effect that commanding officers of army hospitals at times admit civilian patients not specifically covered by regulations where such action is otherwise deemed proper. In time of war, in a somewhat remote location where civilian help was difficult to procure, Colonel Smith admitted plaintiff to the hospital so that the Government might be deprived of her services for as short a period of time as possible and, incidentally, in order to aid plaintiff. He acted in the normal performance of his duties and was not motivated by self-interest. In so doing he and the subordinate medical officers who operated on and treated plaintiff acted within the scope of their employment.

## II.

The operation and subsequent treatment undergone by plaintiff having been administered by servants of the United States acting within the scope of their employment, the question now arises whether Doctors Rector and Freeman who administered said treatment to plaintiff possessed that reasonable degree of skill, knowledge and care ordinarily possessed and exercised by members of the medical profession under similar circumstances. Sinz v. Owens, 33 Cal.2d 749, 205 P.2d 3, 8 A.L.R.2d 759; Trindle v. Wheeler, 23 Cal.2d 330, 143 P.2d 932.

Plaintiff adduced the testimony of three physicians, one the surgeon who eventually arrested the further spread of plaintiff's disease and two other experienced surgeons who testified as experts. The United States elicited medical evidence only from Doctors Rector and Freeman, the two physicians whose alleged negligence is the subject of this litigation.

■ Plaintiff's witnesses testified that within one week after the operation a complex of symptoms appeared which should have occasioned a diagnosis of infection, and that it was not in accord with the standard practice of medicine and surgery in California in 1945 to fail to make such a diagnosis when those symptoms first appeared. The testimony further established that the only method of ascertaining the cause of the infection was by certain laboratory tests, which tests, contrary to the standard practice of medicine, were not performed until seventy (70) days after the operation. Antibiotics were not administered to plaintiff until one month after the operation and then in a dose which even Dr. Freeman admitted was inadequate. The weight of the medical testimony, moreover, was to the effect that the organism which infected plaintiff, though a rare one, was well known to the medical profession in California in 1945, and its presence was not uncommon following surgical operations of the type that plaintiff underwent. And the ailment was one for which efficacious methods of treatment were available, but only if such treatment was administered early, the standard of medical practice in California in 1945 demanding much more speedy diagnosis and treatment than were here effected. It is the conclusion of the Court that the physicians who operated on and treated plaintiff at DeWitt General Hospital did not exercise that degree of skill, knowledge and care ordinarily possessed and exercised by members of their profession under similar circumstances.

## III.

The United States finally contends that if plaintiff was negligently treated by employees of the United States acting within the scope of their employment, her right of proceeding in this court under the Tort Claims Act is nevertheless barred by the Federal Employees' Compensation Act, 5 U.S.C.A. § 751 et seq. Section 751 provides: "The United States shall pay compensation as hereinafter specified for the disability or death of an employee result-

ing from a personal injury sustained while in the performance of his duty * * *." Section 757 provides that where the Act is applicable, it shall be exclusive, and by the Act of October 14, 1949, Chapter 691, Section 303(g), its exclusive application was made retroactive. Section 790 provides: "The term 'injury' includes, in addition to injury by accident, any disease proximately caused by the employment."

The United States urges its position with especial vigor since the Supreme Court decided the case of Johansen v. United States, 343 U.S. 427, 72 S.Ct. 849, 96 L.Ed. 1051 at a date subsequent to that when the Court of Appeals remanded the case at bar with directions to proceed with trial. Canon v. United States, 9 Cir., 188 F.2d 444. In the Johansen case, the Supreme Court barred a federal employee from proceeding against the United States under the Public Vessels Act, 46 U.S.C.A. § 781 et seq., holding that his remedy under the Federal Employees' Compensation Act was exclusive.

▇▇▇ The Johansen case, however, does not govern here as Johansen clearly sustained the injury for which suit was brought while in the performance of his duty. While the Federal Employees' Compensation Act is the exclusive remedy of those who are injured in the performance of their duty, that Act cannot be held to prevent those individuals not covered by it from pursuing other remedies. Dishman v. United States, D.C.Md., 93 F.Supp. 567. In the case at bar, plaintiff was not injured in the performance of her duty. She conceded that the ailment for which she received treatment at a government installation antedated her federal employment, and Colonel Smith testified that plaintiff was not and could not have been properly admitted to the military hospital as a civilian employee who acquired an occupational disease in the performance of official duty. For a construction of the terms "injury" and "occupational disease" see 33 Op.Atty. Gen. 476, quoting from the legislative his-

tory of the Federal Employees' Compensation Act.

## IV.

After the operation at DeWitt General Hospital in June 1945, plaintiff spent the next four years in a succession of hospitals undergoing approximately thirty surgical operations and sixty blood transfusions. While the infection has apparently healed by this time, plaintiff is suffering from the following permanent disabilities resulting from the treatment for the infection: an impairment of circulation of the veins of the left leg, a large ventral hernia which will require further surgical treatment and the permanent insertion of a tantalum wire mesh into the abdominal region, a deformity over the hip bone resulting from the removal of the crest of the ilium, and scarring and permanent deformity of the abdomen. The impairment of circulation in the left leg will continue to give rise to pain and discomfort and to restrict gainful employment, and the disfigurement must necessarily subject plaintiff to mental anguish and embarrassment. Special damages of Twenty three thousand nine hundred four dollars and sixty-five cents, ($23,904.65) consisting of medical bills and loss of earnings were proved at the trial.

At the first trial of this case, the Court stated that plaintiff " * * * seeks damages against the United States in the sum of $100,000. The evidence, without a doubt, discloses that the damage is great, and, if the liability of the United States is established, an award of the amount prayed for would not be excessive". Cannon v. United States, D.C.N.D.Cal., 84 F.Supp. 820, 821. With that conclusion I concur.

▇▇▇ Plaintiff is entitled to a judgment in the amount of One Hundred Twenty-three thousand nine hundred four dollars and sixty-five cents, ($123,904.65) and the clerk is instructed to enter the judgment accordingly.

Let Findings of Fact and Conclusions of Law be prepared in accordance with the rule.