**UNITED STATES of America, Appellant,**

v.

**Myrtle CANON, Appellee.**

**No. 13956.**

United States Court of Appeals Ninth Circuit.

Nov. 19, 1954.

Lloyd H. Burke, U. S. Atty., George A. Blackstone, Charles Elmer Collett, Asst. U. S. Attys., San Francisco, Cal., for appellant.

Ralph Wertheimer, San Francisco, Cal., for appellee.

Before DENMAN, Chief Judge, and HEALY and POPE, Circuit Judges.

DENMAN, Chief Judge.

The United States appeals from a judgment of the District Court awarding Myrtle Canon damages for negligence in an operation on her and operation treatment by Army surgeons in the DeWitt General Hospital near Auburn, California, in which she was serving as a civilian medical secretary.

The case was before us on appeal from a judgment dismissing the complaint. We reversed and remanded for a new trial, 9 Cir., 188 F.2d 444, 446, stating:

"We are of opinion that this testimony, coupled with the official record stating the source of appellant's admission, was prima facie evidence (unrebutted in the record) of an administrative finding of fact, namely, that this civilian employee was suffering from a type of disease specified in Regulation 6b(13).

"* * * On another trial the government will have opportunity to rebut the showing of negligence, and also to rebut, if it can, the prima facie showing that the commanding officer, or some authorized person acting for him, made the factual determination indicated in the Hospital records."

One of the grounds of the government's appeal is that the Army surgeon had no official right to operate on Miss Canon because she was not suffering from a type of disease specified in the above Army regulation and hence the United States is not liable under Section 1346 of 28 U.S.C. That section provides for the government's liability for personal injuries "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with

the law of the place where the act or omission occurred."

By Section 2671, members of the military forces of the United States are declared to be within the term " 'Employee of the government'."

The government's contention regarding the Army regulation is that the evidence does not support finding VI of the court, that "Colonel Smith, in admitting plaintiff to DeWitt General Hospital for medical treatment and in authorizing an operation at the DeWitt General Hospital was acting in the course of his employment and in line of duty * * *."

It is not questioned that, if Colonel Smith, then in charge of the hospital, was acting in the scope of his employment in admitting her for the operation, the operating and treating surgeons were so acting. We think the evidence supports the making of the above finding. The pertinent regulation provides:

"[Par.] 6. Persons who may be admitted to Army hospitals * * *
"b. List.

"(13) Civilian employees of the United States Government compensable by the United States Employees' Compensation Commission who suffer personal injury while in the performance of official duty, or who acquire a disease as a natural result of such injury, *or who acquire an occupational disease in the performance of official duty* * * *."
(Emphasis supplied.)

Miss Canon's employment at the hospital began in October 1944. We were then at war and there was a great shortage of hospital secretaries skilled, as Miss Canon was, in handling the medical maps and the extended reports of the continuing treatment of the soldiers, of which the war had crowded into the DeWitt hospital some 3,000 patients. As stated by Colonel Smith, Chief of the hospital, she was known as "a very valuable employee" and they "wanted to do everything in the world to keep her on the job".

Miss Canon in October, 1944, when she entered her services at the hospital, had excellent general health but with a varicose affliction in the veins of her left leg. She was a heavy woman and this affliction was caused to increase by the great amount of walking and standing in her occupation in handling the maps and taking to and from the files the medical records of the sick soldiers. In May, 1945, she desired to go to San Francisco to have an operation and handed her resignation to Colonel Storck, Chief of Surgical Services of the hospital. Colonel Storck tore it up, stressing that it was her duty to remain in her occupation. She then was promised treatment at his hospital. This did not come until a month later during which her disease was further enhanced by her occupation. Of this we held in our opinion on the first appeal that "her occupation there had increased the infirmity to the point where she could no longer work."

 We regard this complete impairment of her ability to perform the duties of her occupation, an "occupational disease" within the phrase of the Army regulation. In our view her injuries were in a war service and she was as much entitled to the operation by the hospital surgeons as if she had been shot in the leg in battle. The fact that Colonel Smith testified that he thought he had erred in ordering Miss Canon admitted to the hospital does not make invalid her valid admission.

There is abundant evidence supporting the contention of malpractice in the treatment of Miss Canon by the doctor in charge after the operation on her for the varicose veins which had completely incapacitated her. The government next contends that under the applicable California law Miss Canon has not maintained her burden of proof that the acts of malpractice of the Army surgeons were not those which a medical practitioner would have used under similar circumstances.

 All the California cases cited as pertinent concern suits for malpractice

of doctors in small towns. We think none is here applicable. As stated in Sinz v. Owens, 33 Cal.2d 749, 755, 756, 205 P. 2d 3, 5, 8 A.L.R.2d 757, " 'the law exacts of physicians and surgeons in the practice of their profession only that they possess and exercise that reasonable degree of skill, knowledge, and care ordinarily possessed and exercised by members of their profession under similar circumstances.' 41 Am.Jur., Phys. & Surg., sec. 82, p. 201. * * * The essential factor is knowledge of similarity of conditions; geographical proximity is only one factor to be considered."

The "proximity" in which these two military physicians had their "circumstances" of practice was a vast hospital covering a wide area with housing not only for over 3,000 patients, but in addition the housing of all the physicians, nurses and staff of attendants. This extended establishment is some twelve miles from any city.

■ Of the qualification of the physicians of this area Colonel Smith testified that "we had the best doctors in the Army". The doctor responsible for her mistreatment testified to his education in premedical work in the University of California, his medical education at McGill University, his internship for one year at the University of California, another at the County Hospital in San Francisco, a year as resident surgeon, then three years more as a resident surgeon at the University of California. He then became an Army surgeon. Such an experience gives a far wider range of medical knowledge than one could obtain from a private practice of many more years. The operating physician was shown to have a collegiate premedical and medical education. We think Miss Canon has maintained her burden of proof on this issue.

■ The government also contends that Miss Canon's sole remedy for compensation for the government's malpractice is limited to the provisions of the Federal Employees' Compensation Act, 5 U.S.C.A. § 751 et seq. Of this we held on the first appeal that she could not have elected the benefits of that act "because the tort for which she claims damages did not occur until after her acceptance of hospitalization". Certiorari was not sought and this is now the law of the case. We see no reason to depart from it.

■ There is abundant evidence that the post operative treatment Miss Canon received without the use of the antibiotics then known to such practitioners was negligent and that this was the cause of the subsequent years of her pain and suffering, her probable permanent disablement and likelihood of loss of her left leg.

The judgment is affirmed.