[Civ. No. 119. Fifth Dist. Jan. 22, 1963.]

JOHN FRED JOHNSON, Plaintiff and Appellant, v. HARRY BANDUCCI, Defendant and Respondent.

Peckinpah, Fryer & Karr and William B. Boone for Plaintiff and Appellant.

Borton, Petrini, Conron, Brown & Condley and Walter H. Condley for Defendant and Respondent.

BROWN, J.—This appeal originated in a suit for damages for personal injuries sustained in an automobile collision occuring at approximately 7:10 a.m. on December 14, 1960, between the car which plaintiff-appellant Fred Johnson was

driving and a car belonging to and being driven by defendant Delbert Turner Eaton.

The complaint alleged that Eaton, at the time of the collision, was then and there engaged within the course of his employment and as the agent, servant and employee of defendant-respondent Harry Banducci; that the collision was proximately caused by Eaton's negligence; and that Banducci was therefore responsible for it and liable for plaintiff's damages resulting therefrom.

State Compensation Insurance Fund filed a claim of lien for moneys paid to or for the benefit of plaintiff under the Workmen's Compensation Act, but has not otherwise participated in the proceedings below or on this appeal.

The answers of both Banducci and Eaton denied the charge of negligence on the part of Eaton and the allegations relating to the employment or agency relationships and set up affirmative defenses of contributory negligence and assumption of risk.

The issues thus being joined, defendant Banducci moved for a summary judgment on the ground that at the time of the accident Eaton was not acting in the course of his employment or on the business of Banducci, and Banducci was, therefore, not responsible for Eaton's negligence, if any, or liable for any damages caused thereby.

Since the controversy involved on this appeal revolves around the issue of whether or not, at the time of the collision, Eaton was the agent, servant or employee of Banducci acting within the course of his employment or agency, only those averments relating to that issue will be extracted from the affidavits. For convenience, declarations and affidavits will be referred to herein as affidavits.

In support of his motion, Banducci filed his own affidavit and an affidavit of Eaton. Banducci alleges that at the time of the accident Eaton "was not acting within the course and scope of any employment" or as the agent of Banducci; that he "was not doing anything for" and "was not under any orders, directions or instructions" of Banducci. Eaton's affidavit contains averments in substantially the same language to which he added that he "was on his own personal pursuit."

In opposition, plaintiff filed his own affidavit to the effect that he knew Eaton; that he knew Eaton was employed by Banducci and lived on the latter's ranch. Plaintiff also filed

an affidavit signed by one Frank Ramos, in which Ramos averred that he was an employee on a nearby ranch; that he went to the scene of the accident and talked to Eaton, with whom he was acquainted; that Eaton told Ramos he was going to pick up some fellow employee to take him to work and that he was in a hurry to get back to the ranch; that Eaton mentioned the name of the fellow employee, which Ramos did not recall.

At the time of hearing, both sides were granted leave to file additional affidavits. Banducci filed a supplemental affidavit reciting that he did not have any employees other than Eaton; that Eaton worked and was paid on an hourly rate; that due to fog Eaton had not commenced his work of picking cotton that day; that Banducci had not requested or instructed Eaton to pick up anyone; that Eaton "was doing nothing for" Banducci, nor receiving any pay from him. Eaton filed a supplemental affidavit in which he stated that he "does not recall anything until approximately 9:30 on the day of the accident" at which time he was in the Kern General Hospital; that he did not remember a conversation with Frank Ramos; that he did not receive any instructions from Banducci to pick up anyone; that there were no fellow employees; that he was not "doing anything in connection with his employment" at the Banducci ranch; that he was hired to do "general farm work" and nothing else. In Banducci's behalf an affidavit of Frank Ramos was filed which tended to repudiate his prior affidavit filed by plaintiff. He averred that Eaton, who appeared to be badly injured, mumbled "Banducci", that he had missed the corner, that he was late to work, and that he was picking up someone. Ramos assumed that Eaton was employed by one Fred Banducci and that Eaton was going to pick up someone and then go to the Fred Banducci ranch. Then follows an explanation of execution of the prior affidavit.

Plaintiff's counsel then filed a "counteraffidavit" relating solely to averments in the Ramos affidavit which are not relevant here.

The court granted summary judgment dismissing the action as to defendant Banducci. Plaintiff appeals therefrom and presents three issues: (1) that certain supplemental affidavits filed in behalf of Banducci after the hearing are improper and should have been disregarded; (2) insufficiency of the moving affidavits; and (3) plaintiff's counteraffidavits present triable issues of fact.

Plaintiff contends that the trial court erred in permitting both sides, with the consent of counsel, the privilege of filing affidavits in addition to the moving affidavits and counteraffidavits or declarations. It should first be noted that no objection to the filing of additional affidavits was made in the court below; on the contrary, plaintiff's counsel not only consented to the order, but availed himself of the privilege by filing his own declaration thereafter. ▌ We are mindful of the rule that points not raised in the trial court will not be considered on appeal (*Dimmick* v. *Dimmick,* 58 Cal.2d 417, 422 [24 Cal.Rptr. 856, 374 P.2d .824]; *Apra* v. *Aureguy,* 55 Cal.2d 827, 831 [13 Cal.Rptr. 177, 361 P.2d 897]; *Everly Enterprises, Inc.* v. *Altman,* 54 Cal.2d 761, 765 [8 Cal.Rptr. 455, 356 P.2d 199]), but in this case we are disposed to consider plaintiff's contention because of his position that the question is one of judicial jurisdiction. Such questions may be raised for the first time on appeal (*Emery* v. *Pacific Employers Ins. Co.,* 8 Cal.2d 663, 665 [67 P.2d 1046]; *Costa* v. *Banta,* 98 Cal.App.2d 181, 182 [219 P.2d 478]; 1 Witkin, California Procedure, Jurisdiction, § 6, p. 279; 13 Cal.Jur.2d, Courts, § 86, p. 597).

Plaintiff argues that section 437c of the Code of Civil Procedure which governs summary judgment procedure, makes mandatory the filing of affidavits in support of the motion and authorizes the filing of counteraffidavits, but makes no provision for any affidavits in addition thereto; that, since the procedure is drastic, the statutory requirements must be strictly met, may not be enlarged, and cannot be waived by consent or by the doctrine of estoppel. He urges that the trial court lacks power to permit, receive or consider any affidavits in addition to those specified in the statute.

Our attention has not been directed to a case ruling directly on the question. However, there is authority which contains language peripheral to the problem. In *Whitson* v. *LaPay,* 153 Cal.App.2d 584 [315 P.2d 45], and in *Family Service Agency of Santa Barbara* v. *Ames,* 166 Cal.App.2d 344 [333 P.2d 142], the courts mention, without adverse comment, affidavits filed by the movant in response to the opponent's counteraffidavits. And in *Callahan* v. *Chatsworth Park, Inc.,* 204 Cal.App.2d 597, 604 [22 Cal.Rptr. 606], the court, in discussing the affidavits filed in connection with summary judgment proceedings, set out an allega-

tion made in the plaintiff's counteraffidavit, and indicated it felt that the moving defendant should have responded thereto, stating:

"There is no reply declaration in the record and hence this allegation of plaintiff stands undisputed. It seems obvious that this one issue of duress is of sufficient materiality to require denial of a summary judgment."

Section 437c of the Code of Civil Procedure does not purport to prescribe in minute detail the procedure to be followed by litigants and the courts. It contents itself with a requirement of those affidavits deemed essential to a proper motion for summary judgment, leaving the details of the procedure to be supplied by the court under its inherent powers. For example, it does not limit the number of affidavits which may be filed by each litigant. It does not provide for, nor prohibit, continuances of the hearing date. It does not provide for, nor prohibit, the reception by the court of affidavits in addition to those specified therein.

As has often been stated, a trial court has inherent power, independent of statute, to exercise its discretion and control over all proceedings relating to the litigation before it (*Hays* v. *Superior Court,* 16 Cal.2d 260 [105 P.2d 975]). One phase of such power "necessary to the orderly and efficient exercise of jurisdiction" (*Corum* v. *Hartford Acc. & Indem. Co.,* 67 Cal.App.2d 891, 897 [155 P.2d 710]) is the power to obtain evidence upon which the judgment of the court may rest (*Crocker* v. *Conrey,* 140 Cal. 213 [73 P. 1006]). In this case, the additional or supplemental affidavits were the means whereby the trial court received for its guidance and consideration evidentiary facts, and reception thereof constituted a proper exercise of the inherent power of the court. We conclude that, in summary judgment proceedings, the trial court is vested with discretion to permit the filing of affidavits in addition to those specifically mentioned in the statute and its determination in this respect will not be disturbed on appeal unless an abuse of discretion is clearly shown.

It is next contended that the moving affidavits are insufficient to support the judgment.

Numerous cases state and restate the principles of law relating to the nature and purpose of summary judgment procedure and the rules governing the affidavits required by section 437c of the Code of Civil Procedure. A com-

prehensive compilation thereof is set out in the case of *Snider* v. *Snider*, 200 Cal.App.2d 741 [19 Cal.Rptr. 709]. It is there stated at pages 748-749:

"At the outset we recognize the admonition of the Supreme Court in *Eagle Oil & Ref. Co.* v. *Prentice*, 19 Cal.2d 553, 556 [122 P.2d 264] : 'The procedure is drastic and should be used with caution in order that it may not become a substitute for existing methods in the determination of issues of fact. (See *Walsh* v. *Walsh, supra* [18 Cal.2d 439 (116 P.2d 62)].)

 " 'For these reasons it may further be said that the affidavits of the moving party, the plaintiff in this case, should be strictly construed and those of his opponent liberally construed.' (See also *McComsey* v. *Leaf*, 36 Cal.App.2d 132 [97 P.2d 242] ; *Nini* v. *Culberg*, 183 Cal.App.2d 657, 661 [7 Cal.Rptr. 146].) If, after an examination of· the affidavits, doubt exists as to whether summary judgment should be granted, such doubt should be resolved against the moving party. (*Whaley* v. *Fowler*, 152 Cal.App.2d 379, 381 [313 P.2d 97] ; *House* v. *Lala*, 180 Cal.App.2d 412, 415 [4 Cal.Rptr. 366] ; *Travelers Indemnity Co.* v. *McIntosh*, 112 Cal.App.2d 177, 182 [245 P.2d 1065].) But, on the other hand, as we stated in *Burke* v. *Hibernia Bank*, *supra*, 186 Cal.App.2d at page 744 [9 Cal.Rptr. 890] : 'a summary judgment will stand if the supporting affidavits state facts sufficient to sustain a judgment and the counter-affidavits do not proffer competent and sufficient evidence to present a triable issue of fact. (*Coyne* v. *Krempels* (1950) 36 Cal.2d 257, 261 [223 P.2d 244] ; Code Civ. Proc., § 437c.) '

 "We first consider the affidavits of the moving party. They 'must contain facts sufficient to entitle . . . defendant to a judgment in the action. . . .' (Code Civ. Proc., § 437c). To prevail, therefore, such affidavits 'must state facts establishing every element necessary to sustain a judgment in his favor.' (*House* v. *Lala, supra*, 180 Cal. App.2d 412, 416.) Such facts 'shall be set forth with particularity' (Code Civ. Proc., § 437c) and shall be within the personal knowledge of the affiant, the affidavit to show that the affiant, if sworn as a witness, can testify competently thereto. As the court stated in *House* v. *Lala, supra*, ' [t]o satisfy the statutory requirement of "particularity," the movant's affidavits must state all the requisite evidentiary facts and not merely the ultimate facts.

(*Southern Pacific Co.* v. *Fish,* 166 Cal.App.2d 353, 362 [333 P.2d 133]; *Murphy* v. *Kelly,* 137 Cal.App.2d 21, 30-31 [289 P.2d 565].) Moreover, neither conclusions of law nor conclusions of fact are sufficient to satisfy the statutory requirement (*Gardenswartz* v. *Equitable etc. Soc.,* 23 Cal.App.2d Supp. 745, 754 [68 P.2d 322].)' "

With these rules in mind, we turn to the supportive affidavits filed by defendant to determine whether they comply with the statute and establish that he is entitled to a judgment.

■■■ The court must determine when, under evidentiary facts alleged, the employer-employee relationship exists in the legal sense of that term. The establishment of that ultimate fact or conclusion depends upon numerous prior or probative facts. All relevant circumstances must be considered and weighed in relation to one another (*Loper* v. *Morrison,* 23 Cal.2d 600, 605 [145 P.2d 1]; *Fuller* v. *Chambers,* 169 Cal.App.2d 602, 609 [337 P.2d 848]). ■■■ The scope of employment depends upon the alleged employee's activities and when, where, why and how he was acting. Generally, factors to be considered include the intent of the employee, the nature, time and place of his conduct, his actual and implied authority, the work he was hired to do; incidental acts the employer should reasonably have expected would be done, the amount of freedom allowed the employee in performing his duties, whether the act was one the employer might have foreseen, and the other circumstances of the particular case (*Loper* v. *Morrison, supra,* 23 Cal.2d 600, 606; 32 Cal.Jur.2d, Master and Servant, § 117, pp. 554, 555). It is these evidentiary facts which the statutory requirement of "particularity" commands the movant to set forth in the moving affidavits.

■■■ Averments that Eaton was not acting within the course and scope of his employment are mere conclusions of fact (*May* v. *Farrell,* 94 Cal.App. 703, 708 [271 P. 789]). Banducci contends that the phrase "was doing nothing for" is a statement of fact and relies on *Pennington* v. *Commonwealth,* 24 Ky.L.R. 321 [68 S.W. 451, 452], where it was said:

"In the declaration proven the declarant was detailing the facts attending the infliction of the fatal wound, and, in speaking of his own conduct, said 'he was not doing a thing.' It is insisted that that expression is a conclusion, and not a statement of the fact. As part of the res gestae, it was

proper to allow the declarant to state what he did. When he stated he was doing nothing, he was not stating a conclusion, but a fact.''

In our case, the moving affidavits did not state that Eaton was doing nothing; they stated that he was doing nothing for Banducci. What he was doing, or whether he was ''doing nothing'' is a fact; but the effect of his action or nonaction is a conclusion. It is also an opinion, and would be inadmissible since it depends upon direct proof of facts which can be made intelligible to the trier of the fact. In *Benton* v. *Regeser*, 20 Ariz. 273 [179 P. 966, 968], it is said:

''Counsel for the defendant asked him several times, . . . if his minor son was on his 'business' at the time of the accident. Manifestly this called for the conclusion of the witness, . . . and the objection was properly sustained. No questions were attempted to be asked the witness about his son's authority to use the car . . . or the purpose for which his son was driving the car at the time of the accident.''

Eaton's averment that he was engaged in a personal pursuit falls within the same classification. Whether his activity was purely personal or whether its nature was such as to make it an incident of his employment is an ultimate fact or conclusion to be drawn from probative facts of what he was actually doing.

Averments that he was not acting under request or order of Banducci are not determinative. ''An employee may be acting in the course of his employment even though the act done be a violation of some rule or instruction of the employer.'' (*DeMirjian* v. *Ideal Heating Corp.*, 129 Cal. App.2d 758, 766 [278 P.2d 114].)

The fact that Eaton was driving his own car at the time of the accident is not sufficient to relieve Banducci of liability under the doctrine of *respondeat superior*, if Eaton was driving in the discharge of his duty for which he was employed or for the accomplishment of a result desired by Banducci (*Vind* v. *Asamblea Apostolica, Christo Jesus*, 148 Cal.App.2d 597, 602, 603 [307 P.2d 85]).

The remaining allegations in the moving affidavits are worthless. What Eaton was to do for Banducci later that day is immaterial; the crucial question is what he was actually doing at the time of, or had been doing immediately prior to, the collision. The affidavit executed by Ramos

merely attempts to explain away his prior affidavit filed in favor of plaintiff and sheds little light on the problem under consideration.

On the whole, the moving affidavits are comprised of ambiguous statements, conclusions, ultimate facts, inconsistent averments, and valueless items of information, but are barren of evidentiary facts from which the conclusion may be drawn that Eaton was not acting within the course and scope of his employment with Banducci at the crucial time. Our conclusion in this respect compels a reversal of the judgment.

It follows that it is unnecessary to consider the form and sufficiency of the counteraffidavits. As was stated in *Southern Pacific Co.* v. *Fish,* 166 Cal.App.2d 353 [333 P.2d 133], at page 366: ". . . there first must be a sufficiently supportive affidavit before the defects of any counteraffidavit, either of form or substance, need be examined; . . ."

The judgment is reversed.

Conley, P. J., and Stone, J., concurred.