**Joseph J. PROIETTI,
Plaintiff-Appellant,**

v.

**Edward H. LEVI, Attorney General of the United States,
Defendant-Appellee.**

No. 74–1399.

United States Court of Appeals,
Ninth Circuit.

Feb. 11, 1976.

Eugene A. Wright, Circuit Judge, dissented with an opinion.

Byron J. Lawler, Los Angeles, Cal., for plaintiff-appellant.

Donald J. Merriman, Asst. U. S. Atty., Los Angeles, Cal., for defendant-appellee.

## OPINION

Before HUFSTEDLER and WRIGHT, Circuit Judges, and WOLLENBERG,* District Judge.

WOLLENBERG, District Judge:

While stationed at March Air Force Base in California, appellant Proietti, then a Master Sergeant in the Air Force, was involved in a traffic accident with an Air Force officer, Major Nakatani. Pursuant to the Federal Drivers Act, 28 U.S.C. § 2679, Proietti requested representation by the United States Attorney General in a state court action brought against him by Nakatani.[1] After his re-

---

* Honorable Albert C. Wollenberg, United States District Judge, Northern District of California, sitting by designation.

1. That section reads:

§ 2679. Exclusiveness of remedy

(a) The authority of any federal agency to sue and be sued in its own name shall not be construed to authorize suits against such federal agency on claims which are cognizable under section 1346(b) of this title, and the remedies provided by this title in such cases shall be exclusive.

(b) The remedy against the United States provided by sections 1346(b) and 2672 of this title for injury or loss of property or personal injury or death, resulting from the operation by any employee of the Government of any motor vehicle while acting within the scope of his office or employment, shall hereafter be exclusive of any other civil action or proceeding by reason of the same subject matter against the employee or his estate whose act or omission gave rise to the claim.

(c) The Attorney General shall defend any civil action or proceeding brought in any court against any employee of the Government or his estate for any such damage or injury. The employee against whom such civil action or proceeding is brought shall deliver within such time after date of service or knowledge of service as determined by the Attorney General, all process served

upon him or an attested true copy thereof to his immediate superior or to whomever was designated by the head of his department to receive such papers and such person shall promptly furnish copies of the pleadings and process therein to the United States attorney for the district embracing the place wherein the proceeding is brought, to the Attorney General, and to the head of his employing Federal agency.

(d) Upon a certification by the Attorney General that the defendant employee was acting within the scope of his employment at the time of the incident out of which the suit arose, any such civil action or proceeding commenced in a State court shall be removed without bond at any time before trial by the Attorney General to the district court of the United States for the district and division embracing the place wherein it is pending and the proceedings deemed a tort action brought against the United States under the provisions of this title and all references thereto. Should a United States district court determine on a hearing on a motion to remand held before a trial on the merits that the case so removed is one in which a remedy by suit within the meaning of subsection (b) of this section is not available against the United States, the case shall be remanded to the State court.

(e) The Attorney General may compromise or settle any claim asserted in such civil

quest was denied, Proietti filed suit seeking review of that decision. The district court held a *de novo* evidentiary hearing and affirmed the decision of the Attorney General. Because the district court did not employ the proper method for review of the Attorney General's decision, we must vacate and remand for further proceedings.

■ The district court correctly asserted review jurisdiction under the Administrative Procedure Act, 5 U.S.C. § 701 et seq.[2] Review is not precluded by 5 U.S.C. § 701(a)(2). *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 410, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971).

■ The appropriate standard for review is whether the Attorney General's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). In making that analysis, the district court should have focused entirely on the administrative record compiled by the Attorney General. *Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973).

Instead of following this procedure, the district court held an evidentiary hearing and conducted a *de novo* inquiry into the circumstances surrounding appellant's traffic accident. The court then filed findings of fact and conclusions of law and decided as a matter of law that plaintiff was not acting within the scope of his employment at the time of the accident and that the Attorney General was not required to represent him in the state court action.

■ *De novo* review of administrative decisions under the Administrative Procedure Act is proper only under a limited set of circumstances. In Proietti's case, it would be appropriate only if the "agency fact-finding procedures are in-

adequate". *Citizens to Preserve Overton Park v. Volpe, supra,* 401 U.S. at 415, 91 S.Ct. 814. Since the procedures employed by the agency in this case were not inadequate, the district court should not have gone beyond the administrative record.

■ The factual information in the report prepared for the Attorney General was gathered by soliciting a statement from Proietti[3] and an affidavit from his supervisor. Accident reports and answers to interrogatories in the state court action were also considered. There is nothing to indicate that this method produced unreliable information. While the investigation may not have been painstakingly thorough, the same procedures, especially solicitation of affidavits, could have been used to obtain any necessary additional information. Any defects in the investigation were not the result of the agency's "fact-finding procedures". If the administrative record could not have sustained the Attorney General's decision, the proper remedy would have been to remand the case for further consideration. *Camp v. Pitts, supra,* 411 U.S. at 143, 93 S.Ct. 1241.

■ In the district court, appellant claimed that the lack of an administrative hearing made a *de novo* court hearing necessary. The terms of 28 U.S.C. § 2679, however, do not require an administrative hearing, and, in the absence of such a requirement, neither does the Administrative Procedure Act. *Camp v. Pitts, supra,* 411 U.S. at 140–141, 93 S.Ct. 1241.[4]

Further proceedings in the district court might be unnecessary if we could now evaluate the administrative record under the proper standards. However, the record before us is inadequate for that task. While it contains the reports

---

action or proceeding in the manner provided in section 2677, and with the same effect.

In the state action, Proietti's insurer paid $25,000, the policy limit, to avoid a possible bad faith claim, although Nakatani claimed in excess of that amount. No signed release has been executed, and the action is still pending in the state court.

2. *Rothman v. Hospital Service of Southern California,* 510 F.2d 956 (9th Cir. 1975); *State of Washington v. Udall,* 417 F.2d 1310 (9th Cir. 1969).

3. Appellant's response was submitted through his attorney.

4. Consequently, the Administrative Procedure Act's requirement of formal findings by the agency is not relevant to this case.

prepared by the Air Force Judge Advocate's offices at March Air Force Base and Washington, it does not contain a copy of the decision of the Attorney General. Upon remand, the district court should conduct further proceedings to supplement the record in that regard.[5]

The Attorney General contends that the decision of the district court should be upheld even if Proietti was acting within the scope of his employment at the time of the accident. If that is the case, the Attorney General argues that the rule of *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), would preclude Nakatani from recovering from the government.

■ This factor is clearly irrelevant to the decision required by 28 U.S.C. § 2679. The statute requires the Attorney General to base the certification decision solely on the resolution of the scope of employment issue. If Proietti was acting within the scope of his employment, the *Feres* doctrine could be raised as a defense on his behalf when and if the Attorney General represents him in the Nakatani litigation.[6]

■ There is no indication that the Attorney General actually relied on the *Feres* case as a reason for refusing to represent Proietti. The case is mentioned by the Judge Advocate's office in a discussion of defenses to the state court action in the event that Proietti was acting within the scope of his employment. However, if the district court finds that an irrelevant factor entered into the Attorney General's decision, Proietti would still not be entitled to a

*de novo* hearing. Using an incorrect legal doctrine as the basis for a decision would not be a defect in the agency's fact-finding procedures. *Camp v. Pitts, supra,* 411 U.S. at 142–143, 93 S.Ct. 1241.

Vacated and remanded for further proceedings consistent with this opinion.

EUGENE A. WRIGHT, Circuit Judge (dissenting):

The accident giving rise to this litigation occurred on October 12, 1970. Now, more than five years later, the majority vacates and remands for further proceedings. I respectfully dissent.

If the agency fact-finding procedures [1] were inadequate, the de novo review in the district court was appropriate. *Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973); *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 415, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971).[2] If they were adequate, we should simply ignore the evidence presented at the de novo hearing, and review the administrative determination under the arbitrary and capricious test. [5 U.S.C. § 706(2)(A)]

Whichever record is used, I am convinced as a matter of law that the Attorney General should defend Proietti in the state action pursuant to the Federal Drivers Act [28 U.S.C. § 2679].

The administrative record shows the following: Master Sergeant Proietti's private automobile collided with that of Major Nakatani, who subsequently brought a personal injury and property damage action against Proietti in California Superior Court.[3] The accident oc-

---

**5.** As part of its findings of fact and conclusions of law, the district court also concluded that the decision of the Attorney General was not arbitrary and capricious. It is impossible to determine if this conclusion was based solely upon an examination of the administrative record since it was made after the evidentiary hearing. In any event, it cannot stand because the decision of the Attorney General was not included in the record before the court.

**6.** Similarly, the argument that Nakatani has failed to timely file an administrative claim must be rejected as irrelevant to the necessary decision under 28 U.S.C. § 2679.

**1.** While the administrative record includes only the recommendation of Air Force counsel,

the United States Attorney in defending this case has presented that determination as being that of the Attorney General. There is no contention by either party that the administrative action is not final.

**2.** In *Camp v. Pitts, supra,* the Supreme Court was faced with the question whether a de novo hearing, *which had not yet been held,* should be. In the case before us, the district court has already held such a hearing.

**3.** In the state action Proietti's insurer paid $25,000, *the policy limit, to avoid a possible* bad faith claim, although Nakatani claimed in excess of that amount. No signed release has been executed, and the action is still pending in the state court.

curred during normal duty hours on the streets of March Air Force Base, California. At the time of the accident, both Proietti and Nakatani were active duty personnel in an "on duty" status. Proietti was in uniform at the time, and was engaged in transporting directly military documents between buildings located some 1 to 2 miles apart.

Base legal officers recognized that "Senior NCOs and officers routinely used their POVs [Privately Owned Vehicles] while travelling on base, primarily for their own convenience." The inference is inescapable that such POVs were not used *exclusively* for private convenience and that base personnel were aware of this state of affairs.

Proietti was engaged in personal as well as government business at the time of the accident.

There were no regulations either expressly authorizing or expressly prohibiting the use of private vehicles for government business. However, it was unrealistic for Proietti to use government transportation because of the paucity of government vehicles available and the irregularity of service. As a senior non-commissioned officer, he was required to transport the documents within given time constraints, and could not reasonably do so except by using his private automobile. He had used his own car to carry government documents on several occasions prior to the day of the accident as had his predecessor.

The above facts are also apparent from the district court hearing record. In addition, there was testimony at the de novo hearing that base security personnel had been aware for some time that military personnel were using private automobiles on the base for government business.

The facts belie any notion that Proietti was on his own "frolic." He was transporting government documents directly from one building to another. "Deviation" is not at issue. The only

issue is whether Proietti's use of his private automobile, without express authority, and in fulfillment of both government and personal purposes, was within or without "the scope of his office or employment" within the meaning of Section 2679. This issue can be decided as a matter of law. *Cf. Chapin v. United States,* 258 F.2d 465, 467 (9th Cir. 1958).

In resolving the "scope of employment" question presented in a suit instituted under the Federal Tort Claims Act [28 U.S.C. §§ 1346(b) & 2674 (1970)], a federal court "must apply the *respondeat superior* principles of . . . the state wherein the alleged tort was committed. *Williams v. United States,* 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761 (1955) . . . ." *United States v. McRoberts,* 409 F.2d 195, 197 (9th Cir. 1969).

Since 28 U.S.C. § 2671 provides, "as used in this chapter [such chapter including §§ 2671–80] and sections 1346(b) and 2401(b) of this title," and then proceeds to define, *inter alia,* " 'Acting within the scope of his office or employment,' " it is reasonable to conclude that the rule of *Williams, supra,* applies whether the action is brought under section 1346, 2674, or 2679.[4] The Attorney General so concluded and proceeded to apply the law of California.

Our inquiry is whether the California courts would hold, if this case were before them, that Proietti was acting within the scope of employment despite the absence of express authorization. *Chapin,* 258 F.2d at 467. The answer is *yes.*

> The factors to be considered include the intent of the employee, the nature, time, and place of his conduct, his actual and implied authority, the work he was hired to do, the incidental acts that the employer should reasonably have expected would be done, and the amount of freedom allowed the employee in performing his duties.

*Loper v. Morrisson,* 23 Cal.2d 600, 145 P.2d 1, 4 (1944). *See also Johnson v.*

---

4. The result is not different merely because the accident occurred on U.S. Government property. In *Canon v. United States,* 111 F.Supp. 162, 165 (N.D.Cal.1953), *aff'd* 217 F.2d 70 (9th Cir. 1954), the district court applied California law to decide the "scope of employment" issue, even though the accident occurred in a federal government hospital.

*Banducci,* 212 Cal.App.2d 254, 27 Cal. Rptr. 764 (1963).

The mere fact that an employee uses his private vehicle to pursue the business of his employer does not relieve the employer of liability, so long as the employee is acting with the express or implied consent of the employer. *Boynton v. McKales,* 139 Cal.App.2d 777, 294 P.2d 733, 741 (1956).

An employee, particularly one of such significant rank as Master Sergeant, has implied authority to use any means "reasonably proper in the performance of an assigned task." *Garber v. Prudential Insurance Co. of America,* 203 Cal.App.2d 693, 22 Cal.Rptr. 123, 128 (1962). *See also Espinoza v. Rossini,* 247 Cal.App.2d 40, 55 Cal.Rptr. 205, 211 (1966).

Even where an employee combines his own business with that of his employer, "the master will be held responsible unless it clearly appears that the servant could not have been directly or indirectly serving his master." *Ryan v. Farrell,* 208 Cal. 200, 204, 280 P.2d 945, 946 (1929), *followed in Wiseman v. Industrial Accident Commission,* 46 Cal.2d 570, 297 P.2d 649, 651 (1956).

Finally, where an employee has used his own automobile repeatedly in his employer's business with the employer's knowledge and assent, implied authority is often found. 60A C.J.S. Motor Vehicles § 453 at p. 1115 & n. 49 (1969).

Although we have not been directed to a case construing California law in the light of facts such as those before us,[5] I would conclude as a matter of law that a California court would find on these facts that Proietti was acting within the scope of his employment.[6]

---

**5.** In *Boynton v. McKales, supra,* the California Court of Appeal held that an employer was liable for injuries caused by a private automobile being driven by an employee en route home from a company social function if the employee's attendance there was expected by the employer and the employee lived such a distance away that use of an automobile was reasonably necessary. The employer expectation and reasonable necessity factors have similar bearing in the case before us, although the factual situation is quite different.

---

**6.** In *Boynton v. McKales, supra,* 294 P.2d at 741, the court stated:

"The use of a car by an employee who owns one and has a driver's license has become so normal in California that implied consent will soon be accepted . . . ."

While I can find no California decision post-*Boynton* which has turned this prognosis into holding, and can therefore only speculate as to whether a California court would do so in this case, the above language nevertheless adds weight to my conclusion.