[Civ. Nos. 5208, 5209.   Fourth Dist.   Dec. 2, 1955.]

HARRIET JONES, as Administratrix, etc., Appellant, v.
GRACE MAE GILLAND et al., Respondents.

Robert V. Fullerton and Robert S. Morris for Appellant.

Wilson & Wilson for Respondents.

BARNARD, P. J.—On August 1, 1952, while crossing a
street in San Bernardino, the deceased was struck by an
automobile owned by the defendants and driven by the de-
fendant wife.   He filed an action for damages on July 16,

1953, and died on October 22, 1953. His widow was appointed administratrix of his estate and substituted as plaintiff. She filed an amended complaint and also filed a wrongful death action, asserting that the injuries sustained in the accident were a proximate cause of Jones' death. The two actions were consolidated for trial and on this appeal. A jury returned a verdict in favor of the defendants as to each cause of action, and the plaintiff has appealed from the judgment.

The accident happened near the intersection of Mt. Vernon Avenue with Thirteenth Street. Mt. Vernon Avenue runs north and south and has four marked traffic lanes with a double white center line. Thirteenth Street, running east and west, comes into Mt. Vernon Avenue at two points 60 feet apart. One part of Thirteenth Street runs east from Mt. Vernon Avenue, and 60 feet south of there the other part runs west. There was no marked crosswalk at either place. The accident happened about 9 p. m. when the deceased was attempting to cross Mt. Vernon Avenue at a point about midway between where Thirteenth Street comes in from the east and where it goes on to the west. The deceased was struck while he was in the westerly of the northbound traffic lanes, and about 5 feet east of the double white line.

A traffic officer testified that the point of impact was 30 feet south of the south curb of Thirteenth Street as it came in from the east; that the defendants' car came to rest with its front end 24 feet south of that curb line; that the car was 4 feet east of the center line of Mt. Vernon Avenue; that the car had gone 6 feet beyond the point of impact; that the car left "tire marks" running 51 feet back of its front wheels; that these tire marks ran in a straight line; that the deceased lay 9 feet ahead of the car and across the center line; that this was a 25-mile zone; and that the traffic on Mt. Vernon was very heavy.

A witness, who lived on the west side of Mt. Vernon and just south of where Thirteenth Street leads to the west, testified that from her front porch she saw Jones walk south on the east sidewalk of Mt. Vernon Avenue, across the northerly portion of Thirteenth Street, and to a point about 30 feet south of that portion of Thirteenth Street; that he then walked westerly across the easterly half of Mt. Vernon Avenue to a point near the white center line of that street; that he stopped there and waited for the steadily flowing southbound traffic to clear; that she saw him standing at that position

for about 20 to 30 seconds watching the southbound traffic; and that she then saw him being struck by the defendants' northbound car.

Mrs. Gilland testified that she was traveling north on Mt. Vernon Avenue in the lane next to the center line, at a speed of about 25 miles per hour; that she had her eyes on the road and could see ahead for a couple hundred feet or so, but the lights on the southbound cars bothered her; that there were cars on her right going north, but she could not remember just where they were; that as she proceeded she saw a pedestrian in front of her car; that "It seemed like he fell out of the sky"; that "He was very close because I hit him almost instantaneously"; that as soon as she saw him she took her foot off the accelerator and slammed on the brakes; and that she did not turn her car in either direction nor honk her horn. There was also evidence that Jones was struck by defendant's car at a point just inside the left front fender; that he was wearing a white T-shirt; and that there were some artificial lights around this area.

Appellant's main contention is that the court erred in that it refused to give a requested instruction on the last clear chance theory, on the ground that it was "not applicable." It is argued that it could be inferred from the evidence that Jones stood in a position of danger near the white center line for some 30 seconds before he was struck; that he was watching traffic approaching from the north and was oblivious to his peril; that he was standing in an artificially lighted intersection wearing a white T-shirt against a background of dark pavement; that Mrs. Gilland had actual knowledge of his perilous situation while the car traveled 45 feet, plus the time it would take her to act in removing her foot from the gas pedal and applying her brake; that swerving her car a foot or two to the right would have avoided the accident; and that she had a last clear chance to avoid the collision by swerving her car, or by sounding a warning with her horn and thus giving Jones an opportunity to step forward toward the center line. The respondents argue that in order to make the last clear chance doctrine applicable there must be substantial evidence of all of its elements, including actual knowledge of the perilous situation of the other party and his inability to escape, a clear opportunity after acquiring such knowledge to avoid the accident by exercising ordinary care, and a failure to make use of that opportunity; that none of these elements may be established by mere conjecture

or speculation; that a mere possibility of avoiding an accident is not enough; that it must affirmatively appear that a defendant not only had a last chance but a clear chance to avoid the accident by the exercise of ordinary care; that one suddenly confronted with a perilous situation is not required to use the same judgment or skill which is required of him in calmer moments; that there was no substantial evidence here which would have justified the giving of a last clear chance instruction; and that to have given such an instruction would only have had the effect of inviting the jury to use speculation and conjecture.

The requisite elements of the last clear chance doctrine are well settled and are not here questioned. The applicability of the doctrine must usually depend upon the facts of each particular case. In determining whether or not the doctrine is applicable, a reviewing court must view the evidence in the light most favorable to its application and indulge every reasonable inference in support thereof. (*Daniels* v. *City & County of San Francisco,* 40 Cal.2d 614 [255 P.2d 785].) An instruction on last clear chance should be given where there is any evidence which would reasonably support a recovery on that theory. (*Bonebrake* v. *McCormick,* 35 Cal.2d 16 [215 P.2d 728].) Where the act creating the peril and the accident occurred practically simultaneously, neither party can be fairly said to have had a last clear chance to avoid the accident. (*Poncino* v. *Reid-Murdock & Co.,* 136 Cal.App. 223 [28 P.2d 932].) It has been held that the doctrine should not be applied in the ordinary case involving a collision between two automobiles, in the absence of exceptional circumstances. (*Rodabaugh* v. *Tekus,* 39 Cal. 2d 290 [246 P.2d 663].) Even in such a case the existence of facts indicating that the defendant, after seeing the danger, had sufficient time to swerve his vehicle in time to avoid the accident were held sufficient to justify the application of the doctrine. (*Girdner* v. *Union Oil Co.,* 216 Cal. 197 [13 P.2d 915].) A number of cases recognize that a somewhat different situation may well exist where an automobile collides with a pedestrian or a stalled car. In such a case, while the time and space elements are also limited, the exercise of ordinary care may afford the driver a clear chance to avert the collision. Whether a driver had such a chance does not depend entirely on whether, in the exercise of reasonable care, he should have been able to stop in time, but it may involve the opportunity to give a warning or the pos-

sibility of turning or swerving the car in time. Whether the evidence was sufficient to justify an inference that such a driver, by exercising ordinary care, had a clear chance to avoid the accident by turning or swerving his car to one side has in a number of cases been held to be a question for the jury, under facts and circumstances which were somewhat similar in effect to those disclosed by the record here. (*Center* v. *Yellow Cab Co.*, 216 Cal. 205 [13 P.2d 918]; *Selinsky* v. *Olsen*, 38 Cal.2d 102 [237 P.2d 645]; *Lebkicher* v. *Crosby*, 123 Cal.App.2d 631 [267 P.2d 361]; *Bailey* v. *Wilson*, 16 Cal.App.2d 645 [61 P.2d 68].)

There was ample evidence that Jones was negligent, and some evidence that he was looking the other way and was unaware of the approach of respondents' car. There was evidence that after Mrs. Gilland saw him, and before he was struck, her car traveled 45 feet plus the distance it traveled before she changed her foot from one pedal to another and applied the brake; and that she neither sounded her horn nor swerved her car to the right. The evidence indicates that a swerve of only a couple of feet would have been sufficient. ■ It could be inferred from the evidence that after seeing him in this dangerous situation she had a clear chance, in the exercise of ordinary care, to avoid hitting him by swerving her car slightly, or perhaps by sounding her horn to warn him of his danger. Under the evidence and the inferences which could reasonably be drawn therefrom, a factual question was presented on which the jury could have decided either way. It follows that it was prejudicial error to refuse to instruct the jury with respect to that doctrine.

It is unnecessary to consider at length the appellant's further contention that the court erred in denying her motion to strike or "mask" certain hearsay statements, attributed to the decedent's wife, which appeared in a hospital record which was admitted in evidence. The statements in question were to the effect that the deceased's use of alcohol was "moderate to excess," and that at the time of the accident he "was walking home having had several drinks in tavern." The court denied appellant's motion to prevent these statements being shown to the jury, but granted a similar motion made by the respondents to eliminate another statement in the hospital record relating to the matter of insurance. There was other evidence relating to the deceased's condition, with respect to liquor, at the time of the accident. While it would

seem that the statements in question would not have any great bearing on the ultimate result, the ends of justice would be best served by not allowing the jury to hear or see them.

The judgment is reversed.

Griffin, J., and Mussell, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied January 25, 1956.