[Civ. No. 598.   Fifth Dist.   Dec. 7, 1966.]

RAYMONDO ESPINOZA, Plaintiff and Appellant, v. ALBERT WILLIAM ROSSINI, JR., et al., Defendants and Respondents.

---

LaCoste, Keller & Strauss and Donald B. Cantwell for Plaintiff and Appellant.

Cardozo, Trimbur & Nickerson and A. A. Cardozo, Jr., for Defendants and Respondents.

GARGANO, J.—This is an action for damages for personal injuries. The appellant brought this action to recover damages for personal injuries, resulting from an accident which occurred on September 14, 1963. The facts are substantially as follows:

The appellant, an itinerant Mexican farm laborer, was employed on the Zora Cisi Ranch which adjoins the home of the respondent, Albert Rossini, Jr. On the day of the accident appellant, with three other itinerant farm laborers, Pedro Pina, Adolph Zamorra and Zavier Zamorra, was traveling due east on Highway 108 in a farm tractor and trailer combination to a location approximately two and one-half miles from the home ranch, to pick almonds. Pedro Pina was driving the

tractor which was moving along the highway at 10 to 15 miles per hour. The Zamorras were riding in the trailer. Appellant was standing on the drawbar (trailer hitch) immediately behind the driver in order, as he testified, to warn Pina of the approach of vehicles from the rear, and to help him "learn how to drive the tractor better." At approximately 7 a.m. Rossini, Jr. drove his automobile out of the driveway of his home, which was adjacent to the same highway, and headed due east toward the place of his employment at Oakdale, California. The automobile was owned by the respondent Rossini Bros., and was being driven by Rossini, Jr. with the knowledge and consent of said respondent, Rossini Bros. Approaching the slow-moving tractor and trailer from the rear at a speed of approximately 30 to 35 miles per hour, Rossini, Jr. suddenly applied his brakes; his car skidded 15 feet and then collided with the trailer. Appellant was thrown from the hitch; his right leg was fractured in two places and his lower left leg was traumatically amputated. The Zamorras were thrown from the trailer and landed on the pavement. The impact knocked the two front wheels off the trailer, bent both rear wheels and bent the frame. The Rossini Bros.' automobile also sustained substantial damages. At the time of the accident the weather was clear and, except for possible sun glare, the visibility was good. The road was straight, level and dry.

Rossini, Jr. testified that he was driving 30 to 35 miles per hour; that he was looking ahead at all times; that his vision was impaired by the sun glare and he could not see more than 46 feet in front of him at any time, and at times as little as 20 feet; that he saw no oncoming traffic at any time; that he did not cross the center line at any time; that when he first saw the back side of a silver trailer it was approximately 20 feet ahead of him; that he hit his brakes and turned to the left prior to the collision.

Appellant and the tractor driver Pina testified, however, that the visibility was good and that they were not bothered by the sun. This testimony was corroborated, to some extent at least, by appellant's witness Bonnie Jean Blackwood, who testified that within a few minutes after the accident she could see without difficulty two blocks eastward toward the point of the impact. The highway patrol officer who investigated the accident also testified that he had no difficulty with the sun approximately 15 minutes later when he approached the scene of the accident in the same direction as the Rossini automobile had been traveling.

The jury rendered verdicts in favor of appellant and against Rossini, Jr. and Rossini Brothers in the total sum of $32,000, with $10,000 the limit of Rossini Brothers' liability. Judgment was entered thereon. Thereafter, each respondent moved for a new trial and at the time of argument also orally moved for judgment notwithstanding the verdict. The motions were granted and this appeal followed.

The record discloses that on June 25, 1964, the court signed an order granting new trials to both respondents, and that the order was entered on the court minutes on the same date.[1] On June 28th the court also granted the respondents' motions for judgment notwithstanding the verdict, and this order was entered in the court minutes on that date. Since a motion for a new trial is determined when an order ruling on the motion is either signed by the judge and filed with his clerk or is entered on the permanent court minutes,[2] we must first decide whether the court deprived itself of the power to rule on the motions for judgment notwithstanding the verdict by ruling on the motions for a new trial three days earlier.[3]

It is the general rule that where an order granting a new trial is regularly made by the trial court and correctly entered by the clerk in the court minutes, the court's jurisdiction is exhausted, and it may not thereafter vacate or modify the order. (*Hunydee* v. *Superior Court*, 198 Cal.App.2d 430 [17 Cal.Rptr. 856].) In fact, in *Sparr* v. *Byers*, 139 Cal.App. 668 [34 P.2d 787], the court implied that if a new trial is actually granted, jurisdiction is lost except to retry the case.[4]

We do not believe that the general rule is applicable to the facts of this case. Code of Civil Procedure section 629, which authorizes an aggrieved party to move for judgment notwithstanding the verdict, provided prior to 1961 that the motion could be made in the alternative with a motion for new trial. The 1961 amendments relieved the party of the burden of making these motions in the alternative. And, the section as amended also provides that the motion shall be made within the period prescribed for the filing of a motion for a new trial; that the court shall not rule on the motion until the period for

---

[1] The order was entered well within the period prescribed by the Code of Civil Procedure, section 660, for rulings on motion for a new trial.

[2] Code of Civil Procedure, section 660.

[3] This point was not raised by either party in the appeal, but is considered because of the jurisdictional implications.

[4] These cases deal with the power of the court to modify, change or correct findings of fact and conclusions of law after granting a motion for a new trial.

filing a motion for new trial has expired; that if a motion for new trial is also made by the aggrieved party the court shall rule on both motions at the same time, and that if the court does not rule on the motion within the time prescribed it shall be deemed denied. From this it is evident that in amending section 629 the Legislature simply intended to enable an aggrieved party to move for judgment notwithstanding the verdict while preserving his right to move for a new trial, and without forfeiting the right to the new trial if the court grants the motion notwithstanding the verdict and is thereafter reversed by the appellate court. ■ In other words, the procedure to be followed by both the court and the aggrieved party in relation to a motion for judgment notwithstanding the verdict is synchronized with the procedure prescribed for a motion for a new trial, containing the same time periods, time limits and consequences, and it is evident that the language of section 629—''. . . the court shall rule upon both motions at the same time. . . .''—is directory and not mandatory, and that substantial compliance therewith is sufficient, provided the rulings on both motions are made within the requisite time period.

■ We take judicial notice that June 25, 1964, fell on a Friday, and that June 28th fell on the following Monday.
■ From these facts we are able to surmise that for all intents and purposes the court ruled on both motions at approximately the same time, and the three-day delay in the entry of its orders on the permanent court minutes was due to the intervening holidays. Under these circumstances, we believe that there was substantial compliance with section 629, and that although the trial court's action was irregular, the irregularity is not fatally defective. The contrary interpretation would either invalidate both orders or invalidate the trial court's order granting respondents' motion for judgment notwithstanding the verdict, and under the facts of this case would defeat the apparent intent and purposes of the Legislature in amending section 629. ■ It is a cardinal rule that a statute should be given reasonable interpretation, in accordance with the apparent purpose and intention of the lawmakers. (*County of Alameda* v. *Kuchel,* 32 Cal.2d 193 [195 P.2d 17].)

The appellant's main contentions in support of his appeal are:

I That the court improperly granted judgment notwithstanding the verdict because there was sufficient evidence to justify the jury verdicts.

II That the court erred in granting a new trial to each defendant because he had properly instructed the jury on the doctrine of last clear chance.

We will consider each of these contentions separately.

## I

Our review of the record discloses evidence upon which a jury could, by disregarding conflicts and resolving all presumptions, inferences, intendments and questions of doubt in favor of appellant, have reached a verdict favorable to him. Under such circumstances it is improper for the trial court to grant a motion for judgment notwithstanding the verdict. As stated by the Supreme Court in *Quintal* v. *Laurel Grove Hospital*, 62 Cal.2d 154, 159 [41 Cal.Rptr. 577, 397 P.2d 161]: ". . . Such a motion may be granted, properly, only when, disregarding the conflicting evidence, and indulging in every legitimate inference in favor of the plaintiff, the result is a determination that there is no evidence of substantial nature to support the verdict. . . ."

Respondents admit that from the evidence presented a jury could have very well found that Rossini, Jr. was negligent, and that his negligence was a proximate cause of the appellant's injuries. As a matter of fact, the jury, by accepting his own account at face value, could have found him negligent. He testified that his vision was restricted by sun glare to between 20 to 46 feet; that he nevertheless proceeded down the highway at a speed of 30 to 35 miles per hour; and that he struck the trailer which was traveling on its own side of the road, from the rear.[5] Thus, there is ample evidence from which the negligence of respondent Rossini, Jr. could have been deduced and it is reasonably apparent that the trial court, relying on section 21712 of the Vehicle Code, concluded that the appellant was negligent as a matter of law; that his negligence contributed as a proximate cause to his injury; and that there was insufficient evidence for the jury to apply the doctrine of last clear chance.[6]

Appellant concedes that he was riding on the drawbar

---

[5] See *Meads* v. *Deener*, 128 Cal.App. 328 [17 P.2d 178] where the court held the defendant liable under similar circumstances.

[6] Section 21712 of the Vehicle Code reads as follows: "No person shall ride, and no person driving a motor vehicle shall knowingly permit any person to ride on any vehicle or upon any portion thereof not designed or intended for the use of passengers. This subdivision does not apply to an employee engaged in the necessary discharge of his duty or to persons riding within or upon vehicle bodies in space intended for any load on the vehicle."

at the time of the accident. This act, standing alone, would constitute a violation of section 21712 of the Vehicle Code and would be negligence as a matter of law. The appellant testified, however, that he rode on the drawbar to warn the tractor driver of approaching traffic from the rear. Additionally, he testified that he was there to instruct the driver on driving the tractor. Arguably, this could not have been done from the trailer because of the tractor noise. Bearing in mind that the tractor was traveling down the highway at a slow rate of speed, the jury was entitled to find that the appellant's presence on the drawbar was justifiable. ▆ In other words, the section contains the proviso that ''this subdivision does not apply to an employee engaged in a necessary discharge of his duty,'' and whether or not appellant was standing on the drawbar in the necessary discharge of his duty was a question of fact to be decided by the jury.[7] As stated in *Alarid* v. *Vanier*, 50 Cal.2d 617, 624 [327 P.2d 897] : ''In our opinion the correct test is whether the person who has violated a statute has sustained the burden of showing that he did what might reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law. . . .''

It is true, as respondents argue, that there was no evidence that appellant was expressly instructed by his employer to stand on the drawbar to warn the tractor driver of traffic approaching from the rear. ▆ Express instructions, however, are not absolutely necessary in order that the employee's performance be within his duties. It is sufficient if the act committed directly produces the result desired by the employer (*Jameson* v. *Gavett*, 22 Cal.App.2d 646 [71 P.2d 937]) or if the act is an incident to his duty and was performed for the benefit of the employer (*Payne* v. *Industrial Acc. Com.*, 84 Cal.App. 657 [258 P. 620]). Appellant's employer testified that he instructed his workers (including the appellant) to leave early, proceed carefully and to stay partly on and partly off of the road. It is, therefore, arguable that it was necessary for someone to stand on the drawbar to warn the driver of traffic approaching from the rear so as to make certain that on such occasions the slow-moving vehicle was half on and half off of the road. It is also arguable that in order to proceed safely, appellant's presence on the drawbar was necessary to help Pena (apparently an inexperienced driver) drive the tractor.

---

[7]See *Albania* v. *Kovacevich*, 44 Cal.App.2d 925 [113 P.2d 251] for a liberal interpretation of section 21712 of the Vehicle Code.

By resolving all doubts, inferences and intendments in favor of the appellant, whether he was serving his employer's interests or carrying out his employer's desire were questions of fact to be determined by the jury. Respondents' argument that appellant's testimony as to his reasons for standing on the drawbar was effectively impeached, has no validity in support of a judgment notwithstanding the verdict.

Assuming arguendo that the appellant was negligent as a matter of law, we also agree with appellant's contention that whether this negligence contributed as a proximate cause to his injury was a question of fact for the jury to decide. The impact between the colliding vehicles was severe. It knocked the two front wheels off the trailer, bent both rear wheels and bent the trailer frame. Moreover, the Zamorras, who were riding lawfully in the trailer were violently thrown on the highway.[8] The jury, therefore, was entitled to consider whether the force of the collision was so great that appellant would have been injured anyway, i.e., even if he had been in the trailer. That such a determination under proper circumstance is for the jury is supported by the case of *Dallas Ry. Co.* v. *Eaton* (Tex. Civ. App.) 222 S.W. 318. In that case plaintiff was riding upon the running board of the vehicle which was negligently struck by the defendant's vehicle. It was pushed 25 to 125 feet down a street, but plaintiff's vehicle was not overturned and none of the other occupants were injured. The trial court instructed the jury that plaintiff was guilty of negligence as a matter of law in riding upon the running board, but left the issue of proximate cause for the jury's determination. In affirming, the Texas appellate court stated at page 319 : ". . . It can be certainly said that it conclusively appears from the facts of this case that plaintiff would not have been injured in the manner and way he was injured, but for his position on the running board of the jitney. But can it be said with certainty that he would not have been injured at all, but for such position? It can never be known whether, if the occupants of the automobile had all been on the inside, it might not have been overturned, with even more serious results to the occupants than was sustained. . . ."

The reasoning of this decision was applied in *Farole* v. *Eichman*, 39 Cal.2d 822 [249 P.2d 261]. In that case the plaintiff was riding on the handlebars of a bicycle and was struck while

---

[8]Norma Blackwood, the appellant's witness, in referring to the Zamorras, testified, ''When the car hit, then they all, they were all—they flew off of the trailer.''

in the crosswalk. The court in allowing recovery stated at page 824: ". . . while it is true that he should not have been on the handlebars, the jury could reasonably find that this fact was not a proximate cause of his injury, but was merely an accompanying circumstance. . . ."

While the situation presented in *Farole* is extreme, the rationale of the case is that contributory negligence as a matter of law does not necessarily bar the plaintiff's recovery, and that under proper circumstances, whether such contributory negligence is a proximate cause of the injury is a question of fact.

In support of the contrary position, respondents strongly rely on *Lorry* v. *Englander Drayage & Warehouse Co.*, 108 Cal.App. 116 [291 P. 467]; *Reeves* v. *Lapinta*, 25 Cal.App. 2d 680 [78 P.2d 465]; and the dissenting opinion of Justice Traynor in *Combs* v. *Los Angeles Ry. Corp.*, 29 Cal.2d 606 [177 P.2d 293]. These cases, however, are distinguishable. In *Lorry* plaintiff was riding upon the running board on the left side of a jitney bus in violation of the statute. The bus was struck by defendant's truck on the left side and plaintiff was injured. The impact, however, was not severe, each vehicle sustaining only minor damages. In fact, two other passengers who were riding upon the running board on the right side of the bus were not even thrown off. There was no evidence that anyone else was injured. To the contrary, it was reasonably certain from the evidence that the plaintiff would not have been injured had he been riding inside of the bus. Under these circumstances the appellate court held that plaintiff's violation of the statute was a proximate cause of his injury as a matter of law.

In *Reeves*, plaintiff, who was a passenger in defendant's bus, was standing on the step of the bus, in violation of a Los Angeles city ordinance, as it traveled along the street with the door open. The bus gave a jerk and the plaintiff was thrown to the street. As in *Lorry*, it was reasonably certain that plaintiff would not have been injured had she not violated the ordinance.

In *Combs*, the evidence clearly indicated that the plaintiff would not have been injured except for his position on the street car steps. Significantly, at pages 614-615 of the dissenting opinion, Justice Traynor stated:[9] ". . . The unconflicting evidence disclosed by the record shows that the automobile

---

[9]See *Alarid* v. *Vanier*, 50 Cal.2d 617, 624 [327 P.2d 897], whereby certain language of the *Combs* majority opinion, not relating to this part of Justice Traynor's dissent, was disapproved.

struck the side of the streetcar and ripped off the steps, including the step on which plaintiff was standing. If plaintiff had been standing on the platform or in the interior part of the car, he would not have been injured. No reasonable jury, therefore, could doubt that plaintiff's conduct in violation of the ordinance was in fact a contributing cause of his injuries.''

Respondents' argument that the plaintiff would not have been injured in the manner that he was injured but for his position on the drawbar is persuasive. As he asserts, at the time of the collision the trailer was obviously pushed forward, with the front of the trailer wedging appellant's legs below the knee against the ''power take off'' shield of the tractor, thereby causing a traumatic amputation of the left leg below the knee, as well as the fractured bones of the right leg. The fact remains, however, that the plaintiff's position on the tractor bar was not a cause of the accident. And, as stated by the court in *Dallas Ry. Co.* v. *Eaton, supra,* 222 S.W. 318, can it be said with certainty that he would not have been injured at all but for such position? We think not. Consequently, it was up to the jury to consider all of these factors in arriving at a decision.

## II

Respondents' motions for new trial were made on all grounds contained in Code of Civil Procedure section 657. The trial judge, however, did not specify in his order any ground for granting the motions, but he did file an extensive memorandum setting forth the precise basis for the decision. In this memorandum it is clear that he concluded that he had erroneously instructed the jury on the doctrine of last clear chance and that this, and not insufficiency of the evidence to support the judgment or some other error, was his only reason for granting the motions.[10] Consequently, the appellant's contention that the motions were improperly granted turns on the propriety of the trial court's instructing the jury on the doctrine of last clear chance. Under similar circumstances the court in *Bua* v. *G. I. Taxi Co.,* 186 Cal.App.2d 612, 614-615 [9

---

[10]The rule controlling this circumstance has been stated by this court to be ''The trial court did not grant the motion for a new trial on the ground of insufficiency of the evidence to justify the verdict. No mention was made of that ground in the court's order, and it is, therefore, established that the trial court did not determine that the evidence was insufficient to justify the judgment. [Citations.] The only reason for granting the motion as indicated by the court in its memorandum was errors at law in the instructions.'' (*Reclusado* v. *Mangum,* 228 Cal. App.2d 8, 10 [39 Cal.Rptr. 157].)

Cal.Rptr. 118], had this to say: "Where a new trial is granted for an error of law occurring at trial because of an instruction given, if the instruction was correct and should have been given, there is no legal ground upon which a new trial may be granted."

■ Generally speaking, it is the duty of the court to instruct on every theory of the case finding support in the evidence. (*Daniels* v. *City & County of San Francisco,* 40 Cal. 2d 614 [255 P.2d 785].) In fact, it is incumbent upon the trial court to instruct on all vital issues involved. (*Phillips* v. *G. L. Truman Excavation Co.,* 55 Cal.2d 801 [13 Cal.Rptr. 401, 362 P.2d 33].) ■ Specifically, an instruction on the doctrine of last clear chance should be given where there is any substantial evidence which would reasonably support that theory. (*Jones* v. *Gilland,* 137 Cal.App.2d 486 [290 P.2d 329].)

■ Moreover, the appellant is entitled to have the issue, of whether the last clear chance instruction should have been given, determined by viewing the evidence in his favor. (*Selinsky* v. *Olsen,* 38 Cal.2d 102 [237 P.2d 645].)

With these broad principles in mind, we will review the elements which are essential for the doctrine to apply, and we will consider the evidence which may support the appellant's contention that these elements exist in this case in the light most favorable to the appellant.

The requisite elements for the application of the doctrine of last clear chance were meticulously set forth by our Supreme Court in *Brandelius* v. *City & County of San Francisco,* 47 Cal.2d 729, 743 [306 P.2d 432], as follows: ". . . The doctrine of last clear chance may be invoked if, and only if, the trier of the facts finds from the evidence: (1) that the plaintiff was in a position of danger and, by his own negligence, became unable to escape from such position by the use of ordinary care, either because it became physically impossible for him to escape or because he was totally unaware of the danger; (2) that defendant knew that plaintiff was in a position of danger and further knew, or in the exercise of ordinary care should have known, that plaintiff was unable to escape therefrom; and (3) that thereafter defendant had the last clear chance to avoid the accident by the exercise of ordinary care but failed to exercise such last clear chance, and the accident occurred as a proximate result of such failure."

From a reading of the court's memorandum, it is reasonably apparent that the trial judge believed that there was sufficient evidence for the jury to find the presence of the first two elements in this case. In fact, despite Rossini, Jr.'s testimony

that he was blinded by the sun, the trial judge opined that he (Rossini, Jr.) ''had seen the trailer and/or tractor for some time prior to the accident.'' He concluded, however, that the accident was caused by Rossini, Jr.'s passing maneuver at a time when he no longer had the last clear chance to avoid the collision.[11] In other words, the trial judge's view of the accident (supported by the testimony of Mrs. Blackwood) was that Rossini, Jr. pulled out to pass the trailer, saw the oncoming car of the Blackwoods, pulled back in his lane and applied his brakes at a distance which made it impossible to stop in time, and collided with the trailer.[12]

There is hardly any question but that there was sufficient evidence for the jury to find that the first element of the doctrine of last clear chance was present in this case. The appellant was obviously in a position of danger at the time of the accident from which he was unable to escape. Before that he was in a position of danger either because he was engaged in the performance of his duty or because he was inattentive or totally unaware of his danger. ▆▆▆ As stated in *Peterson* v. *Burkhalter*, 38 Cal.2d 107, 110-111 [237 P.2d 977]: ''. . . the inattentive plaintiff, as well as the physically helpless one, comes within the scope of the rule. It applies '. . . not only where it is physically impossible for him to escape, but also in cases where he is totally unaware of his danger and for that reason unable to escape. . . .' ''

▆▆▆ There was also sufficient evidence for the jury to find that the respondent Rossini, Jr. knew that the appellant was in a position of danger and further knew, or in the exercise of ordinary care should have known, that appellant was unable to

[11]In his memorandum the trial judge reasoned as follows: ''It (referring to the doctrine of last clear chance) could not have been applied at the time that he started to overtake and pass the trailer, for at that time, strictly speaking, the trailer was not in danger of being struck. It only became applicable when defendant driver swung back into the right lane on the highway. The court is of the opinion that when that was done, the defendant driver was not more than 20 or perhaps 30 feet at the most from the rear of the trailer. Travelling as he was then at the rate of 45 feet per second, or even allowing for application of brakes, having only two or three seconds at most to avoid striking the trailer, it would appear to the court that he did not have a last clear chance to avoid the accident.''

[12]The trial judge was apparently relying on the rule which has been applied to intersection collisions and which holds that where the act creating the peril occurs practically simultaneously with the happening of the accident and neither party can be fairly said to have had a chance to avoid the consequences the doctrine of last clear chance is inapplicable. (*Kowalski* v. *Shell Chemical Corp.*, 177 Cal.App.2d 528 [2 Cal. Rptr. 319].)

escape therefrom. At the time of the accident the weather was clear and according to four witnesses the visibility was good. It is true that Rossini, Jr. testified that his vision was substantially impaired by the sun, but the jury was entitled to disregard this part of his testimony. (*Tidlund* v. *Seven Up Bottling Co.*, 154 Cal.App.2d 663 [316 P.2d 656].) Moreover, at the location of the accident the road was dry, level and straight. From this evidence and from the testimony of respondent Rossini, Jr. that he was looking ahead at all times, the jury was entitled to find that he had, as the trial judge believed, seen the trailer and/or tractor for some time prior to the collision.[13]

Moreover, the jury could find that he saw people in the trailer and probably even saw appellant riding on the drawbar. As a matter of fact, the evidence indicates that respondent Rossini, Jr. resided next door to the Zora Cisi Ranch, was familiar with farming practices and the practice of hauling migrant workers in the trailer pulled by a tractor, and had heard the tractor pass by his house the very morning of the accident. From all of this, the jury could find that when he first observed the tractor traveling down the highway he was fully aware of all of the circumstances, and if he did not actually see appellant standing on the trailer hitch he knew of appellant's presence in a position of danger, and should have known that appellant was unable to escape therefrom in the event of collision.[14]

The remaining question is whether there was sufficient evidence for the jury to consider the existence of the third element. As we have stated, the trial judge felt that the evidence was to the contrary and thus concluded that he had erroneously instructed on the doctrine. We do not agree. Although the trial judge's opinion as to how the accident happened is logical and well reasoned, it does not allow for other possible interpretations of the evidence which were also within the province of the jury to make. For example, from the evidence, it was possible for the jury to conclude that Rossini, Jr. had seen the trailer and/or tractor from a considerable distance;

---

[13]For the ''must have seen rule,'' see *Gulley* v. *Warren*, 174 Cal. App.2d 470 [345 P.2d 17]; *Jones* v. *Gilland*, 137 Cal.App.2d 486 [290 P.2d 329]; and *McAllister* v. *Kyles*, 186 Cal.App.2d 327 [8 Cal.Rptr. 909].

[14]Numerous decisions have held that merely seeing a vehicle in the path of travel of another vehicle sufficiently apprises a driver that the first vehicle's occupants may be hurt if there is a collision. See *Sills* v. *Los Angeles Transit Lines*, 40 Cal.2d 630 [255 P.2d 795]; *Selinsky* v. *Olsen*, 38 Cal.2d 102 [237 P.2d 645], and *Pire* v. *Gladding McBean & Co.*, 55 Cal.App.2d 108 [130 P.2d 143, 981].)

that he, nevertheless, made his approach at an unsafe rate of speed (in relation to the slow-moving vehicle), misjudged the distance, attempted to pass, discovered the passing lane occupied by an oncoming vehicle, returned to his own lane, applied his brakes and then collided with the trailer. Under these circumstances the jury could well find that Rossini, Jr.'s negligence occurred when he made his unsafe approach with knowledge of the appellant's position of danger, and that he did have the last clear chance to avoid the accident.

Moreover, the trial judge's interpretation unduly restricts the application of the doctrine of last clear chance. It is significant that the word "thereafter" as used by the court in *Brandelius* v. *City & County of San Francisco, supra,* 47 Cal. 2d 729, in describing the third element refers back to the second element and this means that the doctrine is applicable if the negligent act occurs after the defendant has become aware of the plaintiff's position of danger, and his inability to escape therefrom. Consequently, applying the court's own reasoning as to how the accident occurred, the jury could have found that Rossini, Jr. blindly attempted to pass (or at least was negligent in his passing maneuver) and that this act of negligence took place after he knew of appellant's position of danger.

For the foregoing reasons, we conclude that the trial court improperly granted the respondents' motion for judgment notwithstanding the verdict, and that he was wrong in granting a new trial because he had not erroneously instructed the jury on the doctrine of last clear chance, as he believed when he prepared his memorandum. A final question, therefore, is this: Should we grant the new trial because of insufficiency of the evidence to support the verdict?[15] We believe that this question was clearly and unequivocally answered by the California Supreme Court in *Malkasian* v. *Irwin,* 61 Cal.2d 738 [40 Cal. Rptr. 78, 294 P.2d 822]. In that case the trial judge had emphatically declared for the record that he believed that the evidence was insufficient to support the verdict. The minute order, however, was not in accord with the court's expressed intent. The Supreme Court at page 744 of the opinion, after calling attention to the provisions of section 657 of the Code of

---

[15]Since the trial judge granted respondent's judgment notwithstanding the verdict, and since he believed that the evidence did not support his instruction on the doctrine of last clear chance, it is reasonably certain that he would have granted the respondents' motions for a new trial on the ground that the evidence was insufficient to justify the verdict.

Civil Procedure, had this to say: "Thus, although the intent of the trial court is clear, the written order did not specify the ground of insufficiency of the evidence. Under the quoted portion of the section the order cannot be sustained on the ground of insufficiency. . . ."[16]

Since the respondents have failed to call our attention to any other error in support of the trial court's order granting their motions for a new trial, we must reverse.

The order granting a new trial and the judgment notwithstanding the verdict are reversed with directions to enter a judgment on the verdict in favor of Raymondo Espinoza and against Albert William Rossini, Jr. and Rossini Brothers, in the total sum of $32,000 plus costs, the liability of Rossini Brothers under said judgment to be limited to $10,000 plus costs.

Conley, P. J., and Stone, J., concurred.

A petition for a rehearing was denied January 3, 1967, and respondents' petition for a hearing by the Supreme Court was denied February 1, 1967.

---

[16]See *Aced* v. *Hobbs-Sesack Plumbing Co.*, 55 Cal.2d 573 [12 Cal.Rptr. 257, 360 P.2d 897].